```
                UNITED STATES DISTRICT COURT

                   DISTRICT OF SOUTH DAKOTA

                      SOUTHERN DIVISION
```



FILED
MAR 3 0 2015

******************************************************************
                                    *
JESSICA BUUS and BRIAN IVERSON,     *     CIV 12-4173
                                    *
         Plaintiffs,                *
                                    *
    vs.                             *
                                    *     MEMORANDUM OPINION
                                    *         AND ORDER
RICHARD JACOB STELZER;              *     GRANTING MOTION TO CERTIFY
THE UNITED STATES OF AMERICA;       *      SCOPE OF EMPLOYMENT
and THE UNITED STATES               *
DEPARTMENT OF THE ARMY,             *
                                    *
         Defendants.                *
                                    *
******************************************************************

Defendant Richard Jacob Stelzer moves the Court, pursuant to 28 U.S.C. § 2679(d)(3), to find and certify that he was acting within the scope of his employment at the time of a collision with a motorcycle driven by Plaintiff Brian Iverson on which Plaintiff Jessica Buus was a passenger. For the following reasons, the motion will be granted.

## BACKGROUND

The facts are not in dispute. Stelzer is a resident of Pueblo, Colorado. He was a Department of Defense Contractor and a member of the Army Reserve. He was in Sioux Falls, South Dakota for truck driver training. Stelzer's orders stated that he was to report for active duty for a period of 30 days beginning July 9, 2010. During his training, Stelzer stayed at an Army Regional Training Institute (RTI) administered by the South Dakota National Guard located in Sioux Falls. The Army provided three meals a day on site at the RTI. No extra, after-hours meals were provided. Stelzer did not receive a stipend or per diem to eat at civilian establishments. Once training was finished each

day, students were released. The RTI had government-owned General Service Administration (GSA) vehicles available for students' limited use.[1]

On Saturday, July 10, 2010, Stelzer participated in training during the day, after which he received an evening meal at the RTI at approximately 4:00 p.m. During the evening, Stelzer attended a football game with some of the other students and then returned to the RTI.[2] Later that night, another student in the course, Naomi Logan, asked Stelzer if he wanted to get something to eat and he agreed. Logan signed out a GSA vehicle. They agreed to go to McDonald's and left around 10:00 or 10:15 p.m. Stelzer drove because Logan was nervous about the inclement weather conditions. At approximately 10:44 p.m. as Stelzer was leaving the McDonald's drive-through and turning left onto Cliff Avenue on his way back to the RTI, they collided with the motorcycle driven by Iverson. Plaintiffs allege that they suffered injuries and damages as a result of the collision. The Department of the Army determined that Stelzer was not acting within the scope of his employment at the time of the collision and denied Plaintiffs' administrative claims.

Plaintiffs filed this lawsuit against Stelzer and the United States, asserting jurisdiction for the claims against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, based on their assertion that Stelzer was acting in the scope of his employment with the government at the time of the collision. Stelzer requested certification by the Attorney General that he was acting within the scope of his employment, and the Attorney General declined certification. (Doc. 38-4.) Stelzer now petitions this Court to certify, pursuant to 28 U.S.C. § 2679(d)(3), that he was acting within the scope of his employment at the time of the accident, and to dismiss him from this case. The government asks the Court to decline certification and to dismiss

---

[1] The "Official Use Policy" regarding use of GSA vehicles stated that the vehicles are "limited to official purposes, which include transportation . . . between places of temporary lodging and between suitable eating places . . . and such similar places necessary for the sustenance, comfort, or health of the employee to foster the efficient performance of government business." Kerkvliet Affidavit, Exhibit 3.

[2] At his deposition Stelzer did not remember if he went to the football game that evening or a different evening, but his sergeant testified that, on the night of the accident, Stelzer told him he went to the game that evening. Stelzer depo. at 13, 15, 16; Bull depo. at 7-9, 15.

2

the claims against the United States for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Both Stelzer and his sergeant at the RTI testified in depositions that Stelzer was authorized to use the GSA vehicle to drive to McDonald's, and that they believed the accident occurred during Stelzer's "scope of duty" because Stelzer was in Sioux Falls to attend military training. Bull depo. at 24-25; Stelzer depo. at 26, 30. Stelzer also testified that, once training was finished each day, students were released. Stelzer depo. at 14. "That's your time then afterwards." *Id.*

## DISCUSSION

Under the FTCA, the government is liable for the negligent conduct of an employee "while acting within the scope of his office or employment" under circumstances where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Scope of employment issues are governed by the law of the state where the accident occurred, which in this case is South Dakota. *See St. John v. United States*, 240 F.3d 671, 676 (8th Cir. 2001).

Under South Dakota law, "Generally, it is a question of fact for the jury whether an intentional tort is within the scope of employment. *Bernie v. Catholic Diocese of Sioux Falls*, 821 N.W.2d 232, 239 (2012) (diocese not liable under respondeat superior for intentional acts of sexual abuse outside scope of employment). Most respondeat superior cases from the South Dakota Supreme Court involve attempts by third parties to impose liability upon an employer for injuries caused by an employee's intentional torts. Although this case involves negligent conduct, the intentional tort cases are instructive on the test for determining when an employee's acts are within the scope of employment. *See, e.g., Hass v. Wentzlaff*, 816 N.W.2d 96 (S.D. 2012) (insurance agent's theft of annuitant's funds); *Kirlin v. Halverson*, 758 N.W.2d 436, 456 (S.D. 2008) (assault by contractor's employee).

For example, in *Hass v. Wentzlaff*, 816 N.W.2d 96, 103 (S.D. 2012), the South Dakota Supreme Court stated: "We apply a two-part test when analyzing vicarious liability claims. The fact

3

finder must first determine whether the [act] was wholly motivated by the agent's personal interests or whether the act had a dual purpose, that is, to serve the master and to further personal interests." Although *Hass* involved an intentional tort, that distinction was not noted for the test used in *Hass*.

In the present case, the Court finds that Stelzer was acting at least partially out of intent to serve his employer's purpose at the time of the accident, and thus he was acting with a dual purpose. Going to get food in the evening under the facts of this case had a dual purpose because those on duty were last fed at 4:00 P.M. and Stelzer was authorized to use a government vehicle in the manner in which he used it, for his comfort (getting food) after what could be considered short rations. The government did not provide food after 4:00 P.M. and eating was considered to be sufficiently beneficial to the government that it provided Stelzer with a GSA vehicle to use in connection with the activity.

If it is determined that the employee had a dual purpose, the South Dakota Supreme Court instructs that the second requirement for employer liability is foreseeability of the employee's conduct. *See, e.g., Deuchar v. Foland Ranch, Inc.*, 410 N.W.2d 177, 180 (S.D. 1987) (court holds that foreseeability test applies to case involving non-intentional tort where employee had a dual purpose). The *Hass* court stated, "If the act was for a dual purpose, the fact finder must then consider the case presented and the factors relevant to the act's foreseeability in order to determine whether a nexus of foreseeability existed between the agent's employment and the activity which caused the injury." *Hass*, 816 N.W.2d at 103 (quoting *Kirlin*, 758 N.W.2d at 444). The *Hass* court specifically recognized that *Kirlin* was an intentional use of force case, and stated "but we find the standard equally applicable to other acts by an agent," *id.* at 103 n.2, and went on to state "we find that the two-part test established by this Court in *Kirlin* embodies both the employer's intent element from the Restatement (Third) of Agency § 7.07 and the foreseeability element from the Restatement (Second) of Agency §§ 228 and 229 and our vicarious liability precedent." *Id.* at 103 n.3.

*Kirlin* provides first for a determination of whether the act was "wholly motivated by the agent's personal interests or whether the act had a dual purpose...." 758 N.W.2d at 447. Second: "[i]f the act was for a dual purpose, the fact finder must then consider the case presented and the

4

factors relevant to the act's foreseeability in order to determine whether a nexus of foreseeability existed between the agent's employment and the activity which actually caused the injury." *Id.* The nexus of foreseeability does exist in this case because it is foreseeable that a car-motorcycle accident could occur if those in training at the Army RTI are using government-owned vehicles to drive off base to get meals and groceries.

As a part of that second test, the *Kirlin* court went on to state: "If such a nexus exists, the fact finder must, finally, consider whether the conduct is so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." *Id.* The conduct in the present case was not "so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." To the contrary, in the present case, the employer could reasonably anticipate that Stelzer and other National Guard personnel similarly situated would want to get some more food in the evening following a 4:00 P.M. feeding. The use of the government vehicle was authorized for such a use. If the situation were not so clear, there would be a question of fact, if, for example a serviceman while authorized to use the vehicle committed an intentional tort.[3] But the risk of a traffic accident during Stelzer's trip to McDonald's was a risk incidental to his employment with the government such that it would be fair to hold the government liable under the foreseeability test for scope of employment.

Under South Dakota law, the inquiry in this case ends here and Stelzer was within the scope of his employment for the United States and must be dismissed from this lawsuit over a negligence claim arising from a motor vehicle accident.[4] Accordingly,

---

[3]*Bernie*, 821 N.W.2d 232, relies on *Hass* and *Kirlin* and does not alter the tests used in this opinion. Each of those three cases demonstrate that there will usually be questions of fact presented in intentional tort cases. The present case is a negligence claim, not an intentional tort case. Some negligence claims will also present factual issues for scope of employment, but the present case is not one of those cases.

[4]The Court cautions that this holding does not mean that everyone on active military duty is within the scope of their employment at all times for all acts. Cases such as this are fact specific.

5

IT IS ORDERED:

1. That the Defendant Richard Stelzer's Motion to Certify Scope of Employment, Doc. 32, is granted and Stelzer is dismissed from this lawsuit.

2. That the Motion of Defendants the United States Department of the Army and the United States of America to Dismiss for Lack of Jurisdiction, Doc. 37, is denied.

3. That the parties will confer and file by April 10, 2015, a joint status report and proposed order reflecting a schedule for proceeding with the case now that the scope of employment issue has been resolved.

Dated this 30th day of March, 2015.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)        DEPUTY

6